Clyde Martin SONNIER, Appellant

v.

Bobbie Jo SONNIER, Appellee.

No. 09–10–00022–CV.

Court of Appeals of Texas, Beaumont.

Submitted on Oct. 13, 2010.

Decided Jan. 20, 2011.

Hugh O'Fiel, Beaumont, for Appellant.

Cimron Campbell, Orange, for Appellee.

Before McKEITHEN, C.J.,
GAULTNEY and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Appellant Clyde Martin Sonnier appeals the trial court's division of property in a divorce decree. Clyde argues that the trial court erred by failing to timely file findings of fact and conclusions of law, and that the court abused its discretion in dividing the community estate. We conclude appellant waived his right to complain of the trial court's failure to file

findings of fact and conclusions of law, all necessary findings to support the judgment are implied, and the trial court did not abuse its discretion.

## THE RECORD

Appellee Bobbie Jo Sonnier filed a petition for divorce, but after Clyde filed a counter-petition, Bobbie withdrew her petition. In his counter-petition, Clyde asserted reimbursement claims.

The case proceeded to a bench trial. Clyde testified that he worked at ExxonMobil for over thirty-six years, and that he was married to Bobbie during two of those years. According to Clyde, his ExxonMobil retirement account contained $306,000 prior to the parties' marriage. Approximately $102,000 was withdrawn from the account during the marriage. Clyde explained that shortly after the parties' marriage, he paid $12,000 to save Bobbie's separate real estate from foreclosure. The $12,000 came from his 401(k) account. According to Clyde, he also put $30,000 from the account toward the parties' lake house, and $14,000 was used to pay the loan on Bobbie's truck, which she owned before the marriage. Clyde also testified that before the marriage, Bobbie had borrowed $3,000 from her father, and funds from Clyde's retirement account were used to pay that debt. Clyde testified he and Bobbie borrowed $9,700 from his parents. Apparently, the money was used for the lake house and for expenses when Bobbie was unemployed. The lake house was purchased in Bobbie's name.

The seller of the lake house testified that she sold the property to Bobbie, and that the contract for deed was solely in Bobbie's name. The seller testified that Clyde handed Bobbie a check for the down-payment, and Bobbie then handed the check to the seller. Clyde said that the property was his Valentine's Day gift to Bobbie. The seller eventually repossessed the property after Bobbie stopped making payments.

Clyde's mother, Wilma, testified that Clyde and Bobbie borrowed $9,700 from Wilma and her husband. Wilma explained that she was surprised to hear the seller testify that the lake house was a gift from Clyde to Bobbie, because Bobbie and Clyde told her they owned the lake house together. Wilma testified that if she knew Clyde had no right to the house, she would not have loaned the money. Wilma indicated that she believed the lake house was community property because Clyde and Bobbie were married before they purchased the lake house. She and her husband expected the loan to be repaid.

According to Bobbie, Clyde used approximately $17,000 from his retirement account to pay the loan on her truck. Bobbie says that she and Clyde then put the truck into Clyde's name, and Clyde borrowed money against the truck. She testified that she purchased a residence in Lumberton before her marriage to Clyde, so that house was her separate property. She became delinquent in paying the notes on the house because she was instead applying the money to other bills she and Clyde owed. Bobbie explained that the bank eventually foreclosed on the property.

Bobbie explained that she borrowed $3,000 from her father before she married Clyde. According to Bobbie, she and Clyde repaid her father with money from their joint checking account. She was employed at the time. She testified the money in the checking account constituted commingled community funds. When asked about the $9,700 that was borrowed from Clyde's parents, Bobbie testified that she "had already asked [Wilma] to quit loaning money to Clyde." Bobbie explained that she was present when Clyde

borrowed $2,500 from Wilma, and that the money was used for bills, not to pay toward the note on the lake house. Bobbie testified that they also used the $2,500 Clyde borrowed from Wilma on another date to pay bills. Finally, Bobbie testified that Clyde used $30,000 from his retirement fund to pay toward the lake house, and that "the whole thing" was a Valentine's Day present to her from Clyde.

The trial court signed a final decree of divorce, and divided the assets and debts between the parties. The court assigned to Clyde the debt owed to Claude and Wilma Sonnier. The court did not award Clyde anything on his reimbursement claims. Clyde filed this appeal.

### FINDINGS AND CONCLUSIONS

■ Clyde contends that the trial court erred by failing to timely file findings of fact and conclusions of law after Clyde requested them. The clerk's record does not include a "Notice of Past Due Findings of Fact and Conclusions of Law," as required by Rule 297 of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 297. Normally, the failure to file the required "past due" notice is treated as a waiver of the right to complain of the trial court's failure to file findings. In that circumstance, when the record contains no findings of fact and conclusions of law, all necessary findings to support the judgment are implied. *Burns v. Burns,* 116 S.W.3d 916, 921–22 (Tex.App.-Dallas 2003, no pet.).

Approximately seven months after Clyde filed this appeal, and after he had filed his brief with this Court, the trial court signed findings of fact and conclusions of law. The trial court clerk forwarded the findings and conclusions to this Court in a third supplemental clerk's record after Bobbie requested supplementation of the clerk's record. Clyde challenged these findings in a supplemental brief.

When the trial court signed the findings of fact and conclusions of law, it no longer had jurisdiction over the case. *See* Tex.R. Civ. P. 296–299a, 329b(d), (e), (g); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.,* 10 S.W.3d 308, 310 (Tex.2000). Some courts of appeals, including this Court, have suggested that the trial court may file "belated" findings of fact and conclusions of law even after the case is on appeal and the trial court's plenary power has expired. *See, e.g., Robles v. Robles,* 965 S.W.2d 605, 610–11 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Auth.,* 876 S.W.2d 940, 959 (Tex.App.-Beaumont 1994, writ denied); *Morrison v. Morrison,* 713 S.W.2d 377, 380–81 (Tex.App.-Dallas 1986, writ dism'd w.o.j.). In our view, the opinions in these cases do not adequately explain under what authority the trial court may act in making the belated findings and conclusions when the appellate court has exclusive jurisdiction over the case. Instead, in allowing belated findings, the appellate courts note that the only issue that arises with belated findings is the injury to the appellant and not the trial court's jurisdiction to make the findings. *See Robles,* 965 S.W.2d at 610; *Jefferson County Drainage Dist. No. 6,* 876 S.W.2d at 959; *Morrison,* 713 S.W.2d at 381. Both *In re Gillespie* and *Robles* cite this Court's opinion in *Jefferson County Drainage District No. 6* as authority. *See In re Gillespie,* 124 S.W.3d 699, 703 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding); *Robles,* 965 at S.W.2d at 610; *see also Jefferson County Drainage Dist. No. 6,* 876 S.W.2d at 959. We decline to follow the suggestion in *Jefferson County Drainage District No. 6* that a trial court may make fact findings and conclusions of law while the appellate

court has exclusive jurisdiction over the case.

 When a case is on appeal and the trial court's power to perform certain acts after appeal has expired, generally the appellate court exercises exclusive jurisdiction over the case, subject to certain exceptions not applicable here.[1] *Saudi v. Brieven,* 176 S.W.3d 108, 114 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). Judicial actions taken by a court when the court lacks jurisdiction are viewed as nullities. *State ex rel. Latty v. Owens,* 907 S.W.2d 484, 486 (Tex.1995) ("Judicial action taken after the court's jurisdiction over a cause has expired is a nullity."); *Robertson v. Ranger Ins. Co.,* 689 S.W.2d 209, 210 (Tex.1985); *Goodyear Dunlop Tires N. Am., Ltd. v. Gamez,* 151 S.W.3d 574, 593 (Tex.App.-San Antonio 2004, no pet.).

 The trial judge tried the divorce suit in a bench trial. In that setting, findings of fact are considered the equivalent of a jury's fact findings. *See Heritage Res., Inc. v. Hill,* 104 S.W.3d 612, 619 (Tex.App.El Paso 2003, no pet.); *James Holmes Enters., Inc. v. John Bankston Const. & Equip. Rental, Inc.,* 664 S.W.2d 832, 834 (Tex.App.-Beaumont 1983, writ ref'd n.r.e.) (op. on reh'g) ("Findings of

facts are the decisions of the judge and reflect the ultimate and controlling factual issues of a plaintiff's claim or a defendant's defense."). The findings and conclusions form the basis of the judgment. *See* Tex.R. Civ. P. 299. If there are multiple claims or defenses, the trial court through its findings may narrow the bases of the judgment. 6 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* § 18.3 (2d ed. 1998). "[W]hen the findings of fact do not support the judgment, the judgment should either be reformed to conform to the findings, or if appropriate, it should be reversed." *Id.* § 18.14 (2d. ed. 1998).[2]

 When the trial court fails to make fact findings after a party has complied with the rules in making a request and in filing the required reminder, the error is to be presumed harmful unless the record affirmatively shows the complaining party has suffered no harm. *See Cherne Indus., Inc., v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989). After the findings of fact and conclusions of law were filed in the trial court and submitted in a supplemental record to this Court, Clyde filed a supplemental brief in which he argues that the trial court erred in making the late findings.[3] The trial court's judicial act, in

1. *See, e.g.,* Tex.R.App. P. 24.3(a) (dealing with trial court's jurisdiction to perform certain acts relating to post-judgment security after trial court's plenary power has expired). Another exception is the trial court's authority to correct clerical errors in the judgment after the trial court loses jurisdiction. *See Hernandez v. Lopez,* 288 S.W.3d 180, 184 (Tex.App.-Houston [1st Dist.] 2009, no pet.).

2. While it may seem arguable that Rules 296–299a assume the trial court may reform or set aside its own judgment if the trial court determines during the process that corrective action is appropriate, even without a separate timely-filed motion to modify, at least two courts of appeals have held that a request for findings does not extend the plenary power of

the trial court to modify its judgment. *See* Tex.R. Civ. P. 299 (Findings of fact "form the basis of the judgment upon all grounds of recovery and of defense embraced therein."); *In re Gillespie,* 124 S.W.3d 699, 703 (Tex. App.-Houston 2003, orig. proceeding) (citing *Pursley v. Ussery,* 982 S.W.2d 596, 599 (Tex. App.-San Antonio 1998, pet. denied)).

3. Clyde also contends that because the trial court's findings and conclusions included an inventory, yet no inventory was filed by either party, certain findings and the two attached exhibits should be deleted. The clerk's record does not contain an inventory filed by either party, and apparently neither party attempted to offer an inventory as an exhibit at trial. The trial judge clearly had an inventory be-

making findings and conclusions when this Court had exclusive jurisdiction over the case, was a nullity. We consider the appeal as though findings were never filed.

■ Under Rule 44.4 of the Texas Rules of Appellate Procedure, we have the authority to abate this appeal and remand the case to the trial court to cure remediable error. *See* Tex.R.App. P. 44.4. The abatement and remand would return jurisdiction to the trial court to make and file the requested findings and conclusions, and allow the process specified by the rules to be followed. *See, e.g.,* Tex.R. Civ. P. 298 (additional or amended findings of fact and conclusions of law); *see, e.g., Buzbee v. Buzbee,* 870 S.W.2d 335, 336 (Tex. App.-Waco 1994, no writ). The trial court clerk could then properly submit the findings and conclusions to this Court in a supplemental record, and we could allow the parties to re-brief the issues raised. Because he did not file a notice of past due findings in the trial court, however, Clyde waived the failure to file findings and conclusions in this case, and all necessary findings of fact to support the court's judgment are implied. *See Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 255–56 (Tex.1984); *Burns,* 116 S.W.3d at 920. We need not abate the appeal and remand the case to the trial court when the right to complain of the trial court's failure was waived in the trial court. Issue one is overruled.

### Issue Two

In his second issue, Clyde argues that the trial court abused its discretion in dividing the estate. Specifically, he argues that the trial court should have stated property values, and that the trial court failed to award him reimbursement.

■ The trial court's division of property is reviewed under an abuse of discretion standard. *See Bell v. Bell,* 513 S.W.2d 20, 22 (Tex.1974); *see also Moroch v. Collins,* 174 S.W.3d 849, 857 (Tex.App.-Dallas 2005, pet. denied). Upon request, a trial court is required to make findings and conclusions concerning "the value or amount of the community estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented." Tex. Fam.Code Ann. § 6.711(a)(2) (West 2006). The request must conform to the Texas Rules of Civil Procedure. *See id.* § 6.711(b) (West 2006). Clyde waived his right for findings and conclusions by not following the applicable rules of civil procedure.

■ Clyde's remaining argument concerns his reimbursement claims. When one marital estate improves another without receiving a benefit, a claim for reimbursement may arise. *See* Tex. Fam. Code Ann. § 3.402 (West Supp.2010); *Vallone v. Vallone,* 644 S.W.2d 455, 458–59 (Tex.1982). "The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures ... were made and that they are reimbursable." *Vallone,* 644 S.W.2d at 459. A trial court applies equitable principles in deciding whether to recognize a claim for reimbursement. *See id.* at 458; Tex. Fam. Code Ann. § 3.402(b). A decision to deny a claim for reimbursement is reviewed on appeal for abuse of discretion. *See Garcia v. Garcia,* 170 S.W.3d 644, 649 (Tex.App.-El Paso 2005, no pet.).

■ With the exception of the $9,700 borrowed from Clyde's parents, the evidence indicated that the items for which

fore him. Clyde's trial counsel referenced an inventory several times during the trial, and

the trial judge also referenced an inventory.

Clyde claims reimbursement were paid with funds from a retirement account or the parties' joint checking account. The $9,700 borrowed from Clyde's parents does not constitute one marital estate's benefitting another. Rather, Clyde's parents made a loan to the community estate.[4]

██ Clyde testified that the ExxonMobil retirement account contained $306,000 prior to the marriage, and that almost $102,000 was withdrawn from the account during the marriage. Bobbie testified that some of the funds were used to pay bills, and that some funds were commingled. A payment of a spouse's living expenses is not a proper ground for a reimbursement claim. Tex. Fam.Code § 3.409(2) (West 2006). Although the evidence demonstrated that accounts of Clyde and Bobbie contained commingled funds, Clyde offered no evidence specifically tracing the funds in those accounts. See generally Zagorski v. Zagorski, 116 S.W.3d 309, 319–20 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). Bobbie testified that some of the money was a gift to her. A gift from one estate to another generally is not a proper basis for a reimbursement claim. See Graham v. Graham, 836 S.W.2d 308, 309–10 (Tex.App.-Texarkana 1992, no writ). Bobbie testified the bank foreclosed on her house. Bobbie's truck was transferred into Clyde's name.

Clyde had the burden of establishing his right to reimbursement. See Tex. Fam. Code Ann. § 3.402(e). The trial court could reasonably conclude on this record that he failed to meet that burden, or that principles of equity did not support granting reimbursement. See Vallone, 644 S.W.2d at 458–459; see also Tex. Fam. Code Ann. § 3.402(b). We see no abuse of discretion by the trial court in dividing the

marital estate. Issue two is overruled. The trial court's judgment is affirmed.

AFFIRMED.

STEVE McKEITHEN, Chief Justice, concurring.

I concur with the majority's decision to affirm the trial court's judgment. I write separately to express my disagreement with the majority's analysis of the issue concerning the late-filed findings of fact and conclusions of law signed by the trial court. The majority criticizes several cases, one of which is from this Court, that hold that a trial court need not have plenary power to file findings of fact and conclusions of law. See In re Gillespie, 124 S.W.3d 699, 703 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding); Robles v. Robles, 965 S.W.2d 605, 610–11 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Auth., 876 S.W.2d 940, 959 (Tex.App.-Beaumont 1994, writ denied); Morrison v. Morrison, 713 S.W.2d 377, 380–81 (Tex.App.-Dallas 1986, writ dism'd). The majority states that these cases "do not adequately explain under what authority the trial court may act in making the belated findings and conclusions when the appellate court has exclusive jurisdiction over the case." I believe the Gillespie court adequately explained the reason for the rule. In Gillespie, the Fourteenth Court of Appeals explained that "[a] request for findings of fact and conclusions of law does not seek a substantive change in the judgment." In re Gillespie, 124 S.W.3d 699, 703 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). Accordingly, the Fourteenth Court of Appeals held that "[f]indings of fact and conclusions of law, if made by the trial court, do not vacate or change the judg-

---

4. In his brief, Clyde does not assert error in the trial court's assignment of the debt to him in the decree. He asserts a reimbursement claim for his parents' loan.

ment[;] they merely explain the reasons for the judgment. Thus, even if a trial court's plenary power has expired, the trial court is not prevented from entering properly requested findings and conclusions." *Id.* (internal citations omitted).

Without explicitly overruling this Court's precedent to the contrary, the majority concludes that the trial court's action in signing the belated findings of fact and conclusions of law was a "nullity" because the appellate court had exclusive jurisdiction over the case when the findings were signed. In so holding, the majority relies upon cases that hold that judicial action taken after the expiration of a trial court's jurisdiction is a nullity. *See State ex rel. Latty v. Owens,* 907 S.W.2d 484, 486 (Tex. 1995); *Robertson v. Ranger Ins. Co.,* 689 S.W.2d 209, 210 (Tex.1985); *Goodyear Dunlop Tires N. Am., Ltd. v. Gamez,* 151 S.W.3d 574, 593 (Tex.App.-San Antonio 2004, no pet.). These cases did not involve late-filed findings of fact and conclusions of law, but instead involved orders that were either signed or modified after the trial court's plenary jurisdiction had expired. *See Owens,* 907 S.W.2d at 486 ("We declare the order appealed from void because it was signed after the district court's plenary jurisdiction expired."); *Robertson,* 689 S.W.2d at 210 ("The trial court had no power *to change or modify its judgment* once an appeal had been taken therefrom.") (emphasis added); *Gamez,* 151 S.W.3d at 593 (The trial court's "order modifying the judgment to award appellate fees was signed outside its plenary jurisdiction and is void.").

Thus, although I disagree with the majority's analysis of the issue, I concur with the majority's decision to affirm the trial court's judgment.