# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-17-00360-CV

---

**George Allibone M.D., Appellant**

v.

**Mari Robinson J.D., in her Official Capacity as Executive Director of the Texas Medical Board; Juanita Garner, Investigator of the Texas Medical Board; Michael Arambula M.D., Pharm. D., in his Official Capacity as member of the Texas Medical Board; Julie K. Attebury, in her Official Capacity as member of the Texas Medical Board; David Baucom, in his Official Capacity as member of the Texas Medical Board; Frank Denton, in his Official Capacity as member of the Texas Medical Board; John Ellis Jr., J.D., in his Official Capacity as member of the Texas Medical Board; Carlos L. Gallardo, in his Official Capacity as member of the Texas Medical Board; Manuel Guajardo M.D., in his Official Capacity as member of the Texas Medical Board; John Guerra D.O., in his Official Capacity as member of the Texas Medical Board; Scott Holiday D.O., in his Official Capacity as member of the Texas Medical Board; Margaret McNeese M.D., in her Official Capacity as member of the Texas Medical Board; Allan Shulkin M.D., in his Official Capacity as member of the Texas Medical Board; Robert D. Simonson D.O., in his Official Capacity as member of the Texas Medical Board; Wayne M. Snoots M.D., in his Official Capacity as member of the Texas Medical Board; Karl Swann M.D., in his Official Capacity as member of the Texas Medical Board; Paulette Barker Southard, in her Official Capacity as member of the Texas Medical Board; Surendra K. Varma M.D., in his Official Capacity as member of the Texas Medical Board; Stanley Wang M.D., in his Official Capacity as member of the Texas Medical Board; Timothy Webb J.D., in his Official Capacity as member of the Texas Medical Board; and George Willeford III, in his Official Capacity as member of the Texas Medical Board, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-16-002970, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

George Allibone, M.D. appeals from the trial court's order and judgment denying his sworn petition for temporary injunction, permanent injunction and for declaratory judgment regarding a subpoena duces tecum (the subpoena) issued by the Texas Medical Board.[1]  The Board issued the subpoena in connection with its administrative investigation of a pending complaint against Allibone concerning one of his patients, and the subpoena directed Allibone to provide the patient's medical and billing records to the Board.  In the order and judgment, the trial court found the subpoena "reasonable in scope and valid" and ordered Allibone to comply with the subpoena.  In two issues on appeal, Allibone contends that the trial court committed reversible error by failing to issue findings of fact and conclusions of law and that the trial court abused its discretion when it concluded that the subpoena was reasonable and relevant to the Board's pending investigation.  Because we conclude that the trial court did not commit reversible error or abuse its discretion, we affirm the trial court's order and judgment.[2]

**Background**

After receiving a written complaint against Allibone regarding his patient E.M., the Board advised Allibone in April 2016 that it had initiated a formal investigation "to determine if a

---

[1]  We have automatically substituted Scott Freshour, in his official capacity as the Interim Executive Director of the Texas Medical Board, for the former Executive Director. *See* Tex. R. App. P. 7.2(a).

[2]  In a separate but related appeal, this Court's cause number 03-17-00357-CV, Allibone challenges the trial court's order and judgment concerning a separate subpoena duces tecum relating to other patients.  By opinion issued this same date, we affirm the trial court's order and judgment in that case.

violation of the Texas Medical Practice Act has occurred." In the Board's letter notifying Allibone of the complaint, its investigator listed the allegations against Allibone as follows:

> The general statutory allegation is:
>
> 164.051(a)(6) - QC Practice Inconsistent With Public Health and Welfare - Quality of Care
> 164.053(a)(8)  Failure to Supervise Delegates
> 164.052(A)(5) Unprofessional Conduct
> and more specifically relates to:
>
> In the treatment of E.M., it is alleged your nurse hung an intravenous infusion of Curcumin that contained visible particles. It is alleged the staff has not been properly trained in the administration of Curcumin and that patient's life was endangered by improperly mixing this substance.

The investigator also requested that Allibone complete and return a medical practice questionnaire and encouraged him to provide a "detailed narrative explaining the circumstances surrounding this matter." Allibone responded to the letter by completing and returning the medical practice questionnaire and providing a narrative explanation that denied the allegations.

As part of its investigation, the Board also issued the challenged subpoena. The subpoena directed Allibone to provide "complete and accurate copies of all medical and billing records" of his patient E.M. to the Board within 14 days from the date of service of the subpoena. In the cover letter with the subpoena, the investigator advised Allibone that the failure to comply with the subpoena constituted grounds for disciplinary action pursuant to section 160.009(b) of the Texas Occupations Code. *See* Tex. Occ. Code § 160.009(b) (stating that failure to comply with subpoena issued under section 153.007 "constitutes grounds for disciplinary action against the

3

person or entity by the appropriate licensing board"); *see also id*. § 153.007 (authorizing Board to issue subpoena and subpoena duces tecum).

Allibone objected to the subpoena and did not produce the requested documents pursuant to the subpoena. In June 2006, the investigator in additional correspondence advised Allibone that he was "well past his deadline" to produce records responsive to the subpoena and, because he had not complied with the subpoena, he "[could] be cited for an addition[al] violation related to failure to respond to the Board."

Shortly thereafter, Allibone filed the petition for temporary injunction, permanent injunction, and declaratory judgment against the Board, the Board's Executive Director, its investigator, and members of the Board in their official capacities. He sought injunctive relief against appellees to enjoin them from bringing disciplinary proceedings against him "pursuant to Tex. Occ. Code Sec. 160.009(b) for his refusal to comply with the unconstitutional administrative investigative subpoena which sought documents which were irrelevant to the subject matter of the inquiry" and "from further violating [his] constitutional rights as alleged in this petition." He also sought declaratory judgment that section 160.009 of the Texas Occupations Code was "unconstitutional for failure to provide a means of judicial review of an administrative subpoena before the licensee is faced with Board action." And he challenged the constitutionality of related rules, *see* 22 Tex. Admin. Code § 190.8(2)(B), (D) (Texas Medical Board, Violation Guidelines) (listing as "unprofessional and dishonorable conduct" "failing to comply with a board subpoena or request for information or action" and "failing to cooperate with board staff"). He contended: "[W]hile read in conjunction with Tex. Occ. Code Sec. l64.052(a)(5) and164.053, the regulatory

4

provisions are unconstitutional because they afford the Board unfettered powers to subject a licensee to penalties of discipline and disciplinary hearings without affording the licensee an opportunity for prompt judicial review of the constitutionality of the subpoena." *See* Tex. Occ. Code §§ 164.052(a)(5) ("A physician . . . commits a prohibited practice if that person: . . . commits unprofessional or dishonorable conduct that is likely to deceive or defraud the public, as provided by Section 164.053, or injure the public."), .053 (listing unprofessional or dishonorable conduct that is likely to deceive or defraud public). Allibone also challenged the subpoena itself on Fourth Amendment grounds. *See* U.S. Const. amend. IV. He argued that the subpoena was unconstitutional and legally deficient because "it did not seek documents which [were] relevant to the subject matter of the investigation as disclosed in the initiating letter."

Appellees answered and filed a plea to the jurisdiction. The parties thereafter filed competing briefs on appellees' plea and the merits. The trial court considered the plea and the merits of Allibone's claims at a hearing in April 2017.[3] The primary dispute between the parties concerned the proper scope of the investigation. The Board's position was that the scope of the investigation

---

[3] At the same time, the trial court also heard appellees' plea to the jurisdiction and the merits of Allibone's claims in the separate but related case, this Court's cause number 03-07-00357-CV. During the hearing, appellees' counsel conceded the trial court's jurisdiction in both cases to determine whether the subpoenas were reasonable in scope. The trial court summarized appellees' position on their pleas as follows:

> If I understand the Medical Board's position, the Medical Board believes the plea should be granted as it relates to sovereign immunity related to the individuals in their official capacity, as it relates to any allegations of rule [challenges], and to deny the plea as to the review of the subpoena and whether they are reasonably related to the complaints, correct?

Appellees' counsel responded: "That's a fair statement, Your Honor, yes, sir."

5

was driven by the written complaints that it had received; Allibone countered that the investigation was limited to the specific allegations raised in the Board's letter notifying him of the complaints.

The trial court received documentary evidence, including the confidential written complaints. The Board submitted the confidential written complaints and Allibone submitted the patients' records to the trial court for in camera review.[4] The trial court also received other documentary evidence, testimony by deposition from the Board's medical director, and testimony from the Board's interim executive director. The director testified generally about the Board's enforcement process after it receives a written complaint through judicial review. He explained the role that subpoenas play in this process and why the Board needs the patient's "full" medical and billing records. He also testified that the investigation of the complaints against Allibone was not complete and that the Board was unable to proceed with the investigation because Allibone had not complied with the subpoena.

Following the hearing, the trial court found that the claims asserted by Allibone in his petition lacked merit and denied his petition for injunctive and declaratory relief. In its order and judgment, the trial court also found that the subpoena was "in all respects reasonable in scope and valid" and ordered Allibone to "fully comply" with the subpoena by May 30, 2017. Allibone requested findings of fact and conclusions of law, but the trial judge declined to make them,

---

[4] The sealed evidence is part of the record on appeal. According to the Board, the complainant(s) have not waived confidentiality of the complaint or their identity. *See* 22 Tex. Admin. Code § 178.4(c) (Texas Medical Board, Complaint Initiation) (requiring "identity of a complainant, as well as the complaint itself" to remain confidential unless complainant specifically waives confidentiality or testifies in contested case hearing).

explaining by letter to the parties that she had determined, in her discretion, that they were not necessary or appropriate.  This appeal followed.

## Analysis

**Findings of Fact and Conclusions of Law**

In his first issue, Allibone argues that the trial court's refusal to make findings of fact and conclusions of law amounts to reversible error.  *See* Tex. R. Civ. P. 296 ("In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law.").  He requests that this Court reverse the trial court's order and judgment and remand the case to the trial court for issuance of findings of fact and conclusions of law.

Assuming without deciding that findings of facts and conclusions of law would have been required here, Allibone did not file with the trial court or serve appellees with a "Notice of Past Due Findings of Fact and Conclusions of Law."  *See id*. R. 297.  Thus, he waived his right to complain about the trial court's failure to file findings of fact and conclusions of law.  *See Sonnier v. Sonnier*, 331 S.W.3d 211, 214 (Tex. App.—Beaumont 2011, no pet.) ("Normally, the failure to file the required 'past due' notice is treated as a waiver of the right to complain of the trial court's failure to file findings."); *Burns v. Burns*, 116 S.W.3d 916, 922 (Tex. App.—Dallas 2003, no pet.) (concluding that appellant waived complaint on appeal of any error related to trial court's failure to make findings or conclusions because appellant did not file past due notice as required by Texas Rule of Civil Procedure 297); *see also Borjas v. Fannie Mae*, No. 03-13-00323-CV, 2014 Tex. App. LEXIS 11510, at *10–11 (Tex. App.—Austin Oct. 17, 2014, no pet.) (mem. op.)

7

(concluding that appellant had not preserved issue of trial court's failure to file findings and conclusions because appellant did not comply with Texas Rules of Civil Procedure 296 and 297). Further, even if Allibone had preserved his complaint, we would conclude that any error by the trial court in failing to issue findings of fact and conclusions of law was harmless, as any such failure has not prevented him from presenting his case to this Court. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (finding that "[a]ny error in [not making findings of fact or conclusions of law] was harmless, as it did not prevent [appellant] from properly presenting its case to the court of appeals or this Court" and implying finding to support judgment). We overrule Allibone's first issue.

**Reasonableness and Relevance of Subpoena**

In his second issue, Allibone argues that the trial court's conclusion that the subpoena was reasonable and relevant to the issues being investigated amounted to an abuse of discretion. *See McLane Co. v. Equal Emp't Opportunity Comm'n*, 137 S. Ct. 1159, 1170 (2017) (concluding that district court's decision to enforce administrative subpoena was reviewed for abuse of discretion). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

Allibone's arguments that the trial court abused its discretion are based on the Fourth Amendment protections "against unreasonable searches and seizures." *See* U.S. Const. amend. IV. Relevant to this appeal, Fourth Amendment protections when applicable generally require an agency to "conduct its investigation pursuant to an authorized purpose, and the [administrative] subpoena must be relevant to that purpose." *See Schade v. Texas Workers' Comp. Comm'n*, 150 S.W.3d 542,

550–51 (Tex. App.—Austin 2004, pet. denied) (citing *Sinclair v. Savings & Loan Comm'r*, 696 S.W.2d 142, 151–52 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)); *see also generally See v. Seattle*, 387 U.S. 541 (1967); *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946); *United States v. Zadeh*, 820 F.3d 746 (5th Cir. 2016). Allibone argues that the subpoena violated his Fourth Amendment rights by seeking documents that were not relevant to the Board's investigation because the "entire care" of the patient and billing matters were "not the subject matter of the investigation."

Allibone's position focuses on the relevance of his patient E.M.'s records to the pending investigation against him based on the allegations as stated in the Board's letter notifying him of the complaint. According to Allibone, the allegations in the Board's notice letter to him "set forth nothing whatsoever pertaining to [Allibone]'s medical care of patient E.M. at all so as to prompt the issuance of an administrative subpoena requesting [the] complete medical and billing record." Allibone, however, does not dispute the Board's authority to investigate complaints concerning physicians, to issue subpoenas as part of an investigation, and to discipline physicians. *See* Tex. Occ. Code §§ 151.003(b) (stating that Board is "primary means of licensing, regulating, and disciplining physicians"), 153.007(a) (authorizing Board to issue subpoenas and subpoenas duces tecum), 164.001–.154 (addressing disciplinary actions and procedures). He also cites no authority, and we have found none, to support his position that an investigatory subpoena issued by the Board must be narrowly tailored in scope to the specific allegations in the notice letter. *See id.* § 154.053 (requiring Board to notify physician that complaint was filed and "nature of the complaint unless the notice would jeopardize an investigation"). We also disagree with Allibone's characterization of the notice letter, given the specific reference to the "treatment of E.M."

Here, the trial court was able to review the written complaint against Allibone in camera, and the Board presented evidence concerning its reasons generally for seeking a patient's complete records. For example, the interim executive director testified:

> [T]he Board needs the full medical records and billing records to put the complaint in context. And when I say, 'to put it in context,' is the purpose, obviously, is an investigative subpoena to determine whether or not there is actually a violation, and in order to do that, the full record needs to be given to provide the context.

He also explained that the investigation's scope is based on the complaint, differentiating between the complaint and the notice letter to the physician:

> The complaint is the defining document. The notice letter is to give notice and let the physician know that what the investigation is being opened on generally and then again, as I said, the Board has an investigative process and procedure where if it is standard of care, they will seek medical records, they will seek billing records related to that patient and to look at those to put in context whatever the violation is.

*See* Tex. Occ. Code §§ 154.053, .056 (requiring Board to investigate and resolve complaints).

In his deposition, the Board's medical director testified that, in reviewing records, it "becomes quite obvious that the full and complete medical record is required for review. There'd be no way to vindicate or dismiss an investigation or a complaint if [the Board was] not able to review the underlying records to determine whether the standard of care was met or violated." He also testified that it was "quite obvious and apparent that the physician is exactly the wrong person to determine which portions of the medical record are relevant and which portions should be withheld from the investigation." He explained, "[A] physician who has a vested interest in the outcome should not be the gatekeeper of records that the Board can look at . . . in the course of its

10

investigation." Concerning billing records, the medical director testified that the Board "can rely quite heavily on billing records to determine the accuracy of the medical records that were submitted to the Board to make sure that we've got a full and complete set of medical records." Allibone offered no substantive evidence rebutting the medical director's testimony.

Given the Board's undisputed evidence, including the complaint and the subpoena that was limited in scope to the record of E.M., we conclude that the trial court did not abuse its discretion when it found that the subpoena was "in all respects reasonable in scope and valid." *See Schade*, 150 S.W.3d at 550–51; *see also Walling*, 327 U.S. at 201 ("The very purpose of the [administrative] subpoena and of the order, as of the authorized investigation, is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so.").[5]

As part of his second issue, Allibone also complains that the trial court did not address his "as-applied" constitutional challenge to section 160.009 of the Texas Occupations Code and his "facial" constitutional challenge to related Board rules that subjected him to discipline for failing to comply with the subpoena. *See* Tex. Occ. Code § 160.009(b);

---

[5] In his reply brief, Allibone argues that appellees "for the first time ever" in their brief to this Court represent that the letter notifying him of the complaint "[did] not really disclose the actual nature of the complaint being investigated" and that the trial court's consideration of the complaint in "secretive proceedings" to the extent it varied in substance from the notification letter amounted to reversible error. Allibone misconstrues appellees' position. Consistent with their arguments before this Court, appellees' arguments to the trial court included that the Board's investigation was driven by the scope of the complaint, that it was not required to provide a detailed list of the allegations but the general "nature of the complaint," and that the notice to Allibone complied with this requirement. *See* Tex. Occ. Code § 154.053 (requiring Board to notify physician of "nature of the complaint"). Allibone also did not object to the submission of the complaint along with the medical records to the trial court for in camera review. *See* Tex. R. App. P. 33.1(a).

22 Tex. Admin. Code § 190.8(2)(B), (D). He argues that the trial court's failure to address these constitutional claims "without the articulation of any reasoning" amounted to an abuse of discretion and reversible error, explaining that his constitutional claims were "particularly important in light of the threats made by [appellees] to discipline [him] for seeking judicial review and for failure to unconditionally obey the subpoenas." He further argues that, "[a]s a matter of law statutory and regulatory schemes which subject an individual to an administrative process aimed at punishing an individual for failure to obey administrative subpoena while failing to provide for pre-compliance judicial review of the subpoena [are] unconstitutional as a matter of law."

As an initial observation, Allibone cannot bring his claims brought under the UDJA to the extent that they challenged the constitutionality of Board rules. *See Machete's Chop Shop, Inc. v. Texas Film Comm'n*, 483 S.W.3d 272, 285–86 (Tex. App.—Austin 2016, no pet.) (observing prior holding that claim under UDJA challenging administrative rule "'falls outside the UDJA altogether'" (quoting *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 708 (Tex. App.—Austin 2013, no pet.)); *see also* Tex. Civ. Prac. & Rem. Code § 37.004 ("A person . . . whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under . . . the statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder.").

As to his as-applied challenge to the constitutionality of section 160.009, the trial court in its order and judgment found that the relief that Allibone requested in his petition lacked merit and should be denied and then denied "all relief not specifically addressed herein." Thus, the trial court addressed this constitutional challenge to the statute, concluding the challenge to be

without merit. And we must uphold this conclusion "if it can be upheld on any legal theory that finds support in the evidence." *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

"[A]n as-applied challenge asserts that a statute, while generally constitutional, operates unconstitutionally as to the claimant because of her particular circumstances." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 702 (Tex. 2014) (citing *City of Corpus Christi v. Public Util. Comm'n of Tex.*, 51 S.W.3d 231, 240 (Tex. 2001); *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995)). Whether a statute is unconstitutional is a question of law, which we review de novo. *See Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). Statutes are presumed to be constitutional, and a party challenging the constitutionality of a statute has a "high burden." *Id.*; *see* Tex. Gov't Code § 311.021(1) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended."). The determination of a statute's constitutionality in most instances requires us "to consider the entire record, including evidence offered by the parties." *Patel*, 469 S.W.3d at 87 (citing *Garcia*, 893 S.W.2d at 520). We turn then to consider Allibone's challenge to section 160.009 in the context of the entire record.

The Board presented evidence concerning the Board's process when a physician refuses to comply with a subpoena. The interim executive director testified that "there are no automatic sanctions with the Medical Board" but that the failure to comply with a subpoena "is grounds for a possible disciplinary action," and explained the process in that situation:

13

[I]f there is noncompliance or failure to comply with a subpoena, a new investigation is started, notice will be given, there will be an opportunity to respond then the case will move forward even all the way up through the ISC [informal settlement conference] process, so there is no automatic sanction. All the notice provisions would apply, the ISC provisions would apply, that type of thing.

*See Texas Med. Bd. v. Wiseman*, No. 03-13-00210-CV, 2015 WL 410330, at *2–3 (Tex. App.—Austin Jan. 30, 2015, no pet.) (mem. op.) (describing administrative disciplinary procedures before Board). The record also showed that the Board has followed its process concerning Allibone's particular circumstances, advising him of the possibility of disciplinary action for failure to comply with the subpoena.

Given this undisputed evidence in the context of the relevant statutory and regulatory framework, we conclude that Allibone failed to meet the "high burden" to overcome the statute's constitutionality to show that section 160.009 operated unconstitutionally because of his particular circumstances. *See Patel*, 469 S.W.3d at 87; *Rivera*, 445 S.W.3d at 702. Thus, the trial court did not err by concluding that Allibone's "as-applied" challenge to the constitutionality of section 160.009 was without merit. *See Worford*, 801 S.W.2d at 109; *see also Sonnier*, 331 S.W.3d at 214 (explaining that generally appellate court implies necessary findings when complaint was not preserved that trial court failed to file findings of fact and conclusions of law). We overrule Allibone's second issue.

## Conclusion

Having overruled Allibone's issues, we affirm the trial court's order and judgment denying Allibone's petition for injunctive and declaratory relief.

14

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed:   November 21, 2017