**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00411-CV**

_____

**IN THE INTEREST OF D.P. AND D.P.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 21-01-00423-CV**

**MEMORANDUM OPINION**

Appellant, E.L.J. ("Appellant" or "Edwin"), the maternal uncle of three-year-old twins, D.P. and D.P. (collectively "the children"), filed a Petition to Modify Parent-Child Relationship seeking custody of the children.[1] Edwin filed his Petition to Modify after the trial court had already rendered its Final Order in Suit Affecting the Parent-Child Relationship and Order for Termination that terminated the parental rights of the children's biological mother, who is Edwin's sister, terminated the rights of the children's biological father, and appointed the

---

[1] To protect the children, we use either initials or pseudonyms for "the children" and for the relatives of the children. *See* Tex. R. App. P. 9.8(a), (b).

1

Department as the permanent managing conservator of the children. *See In re D.P.*, No. 09-22-00048-CV, 2022 Tex. App. LEXIS 5279, at \*1 (Tex. App.—Beaumont July 28, 2022, pet. denied) (mem. op.). At the time Edwin filed his Petition to Modify, the children had already been placed with a foster family that wanted to adopt the children. After Appellant filed his petition, the children's foster parents intervened and filed a motion to strike Appellant's petition, arguing that he lacked standing. The trial court agreed and granted the motion to strike, finding Appellant lacked standing. On appeal, Appellant argues that the trial court erred. As explained herein, we affirm.

Background

On January 18, 2022, the trial court rendered a Final Order in Suit Affecting the Parent-Child Relationship and Order for Termination that terminated the parental rights of the children's biological mother ("Mother"). Mother appealed the Order for Termination, which this Court affirmed.[2] The Order also appointed the Department as permanent managing conservator of the children.

---

[2] We upheld the order terminating the biological parents' parental rights and appointing the Department as the Permanent Managing Conservator of the children. *See In re D.P.*, No. 09-22-00048-CV, 2022 Tex. App. LEXIS 5279 (Tex. App.—Beaumont July 28, 2022, pet. denied) (mem. op.). This Court takes judicial notice of the record on appeal in the prior lawsuit. *See In re Z.L.*, No. 09-20-00194-CV, 2020 Tex. App. LEXIS 9639, at \*8 (Tex. App.—Beaumont Dec. 10, 2020, pet. denied) (mem. op.) (taking judicial notice of the records in a related appeal involving appellant and a different child); *Moore v. Zeller*, 153 S.W.3d 262, 264 (Tex. App.—Beaumont 2004, pet. denied) (explaining that a court may take

A few weeks later, Edwin filed a Petition to Modify Parent-Child Relationship. In his Petition Edwin asserted that he has standing to bring the suit under the Family Code Sections 102.004(a)(1), 102.006(c), and 156.002(b), and he requested temporary orders appointing him temporary conservator of the children with the right to designate their primary residence. In the alternative, Edwin asked the court to render a temporary order placing the children in his home or granting him possession of and access to the children. According to Edwin, the Department had completed an assessment of his home, the children's present circumstances would significantly impair their physical health or emotional development, the children "are in foster care with no contact with biological family[,]" and the requested modification will be in the children's best interest.

Edwin's sworn declaration was attached to his petition, and the declaration states, in relevant part:

> I found out that my niece and nephew were in the custody of the Department [] in late summer/early fall in 2021. I contacted the caseworker [] and expressed my desire to have my niece and nephew placed in my home. On November 16, 2021, [the caseworker] and the children's guardian ad litem visited my home and interviewed me. During this visit, [the caseworker] informed me that a home study request would be initiated. On November 23, 2021, I contacted [the caseworker] via text message to request an update on the home study

judicial notice of its own records, including the record in the appeal of an appellant's prior lawsuit); *Smith v. Allstate Indem. Co.*, No. 09-01-348-CV, 2002 Tex. App. LEXIS 8330, at *19 (Tex. App.—Beaumont Nov. 21, 2002, pet. denied) ("A court may take judicial notice of our judgments and records in the same or related cases.").

process. [The caseworker] informed me that the process could take six to eight weeks and to expect to be contacted by an assessor. Exactly eight weeks and one day later, on January 19, 2022, I contacted [the caseworker] again requesting an update. [The caseworker] requested more information that I provided. I was subsequently contacted by the assessor and the home visit was conducted on January 30, 2022.

The children's present circumstances would significantly impair their physical health or emotional development. The children are in foster care with no contact with biological family. Since a final order was entered terminating parental rights, a home evaluation has been conducted on my home. My wife and I are fully prepared, willing and able to provide my niece and nephew with a safe, loving environment. It is in the children's best interest to be placed with a relative. Appointing me as a managing conservator and/or placing the children in my home is in their best interest. The modification requested is in the best interest of the children.

The children's foster parents ("the Fosters") then filed a Petition in Intervention. The Fosters asserted that it was in the children's best interest for them to remain with the Fosters while the case is pending. The Fosters also filed a motion to strike Edwin's Petition to Modify, arguing that he lacked standing. In addition, the Fosters filed a Motion to Deny Relief in Suit to Modify Parent-Child Relationship, arguing that the affidavit attached to the Petition to Modify "does not provide the Court with facts to support an allegation that 'the children's present environment may endanger the child[ren]'s physical health or significantly impair the child[ren]'s emotional development[,]" as required by the Family Code. The Fosters argued that based solely on the affidavit, the trial court should deny Edwin the relief he seeks and should not schedule a hearing.

4

In their brief in support of their motion to strike, the Fosters stated that the children were placed in their home on or about March 25, 2021, and the children have been in their care since that time. The Fosters also alleged that Edwin had two supervised visits with the children, on or about May 17 and June 7, 2022, and that he has had no other contact with the children. The Fosters alleged that Edwin's affidavit in support of his Petition to Modify is inadequate to show that he has standing to file suit because it makes only a conclusory assertion, which falls short of the "satisfactory proof" that "the order requested is necessary because the child[ren]'s present circumstances would significantly impair [their] physical health or emotional development[]" as required by section 102.004(a)(1) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 102.004(a)(1); *see also id.* § 156.102(b). According to the Fosters, the affidavit contains only legal conclusions and no factual allegations, rendering it insufficient to establish standing.

In response to the Motion to Strike, Edwin alleged that "[t]here should be no question as to whether an order granting the Department permanent conservatorship of 3-year[-]old children should be reassessed[,]"and "[t]he danger of three-year-old children left stranded in the foster care system is obvious." Edwin also argued that his Petition to Modify alleged that the children's present circumstances would significantly impair their physical health or emotional

5

development, as required by sections 102.004 and 156.102 of the Family Code. *See id.* §§ 102.004(a)(1), 156.102(b). Edwin also alleged that "these 3-year-old children are in foster care in the permanent custody of the State of Texas with no contact with biological family." The Fosters filed a First Amended Petition in Intervention, adding an allegation that appointment of Edwin as sole managing conservator would significantly impair the children's physical health or emotional development and that it was in the children's best interest for them to remain in their placement with the Fosters.

In their reply, the Fosters agreed that Edwin is a relative within the third degree of consanguinity as required by section 102.004(a)(1). However, the Fosters argue that Edwin provided no factual allegation nor proof to support his argument that the children's present circumstances would significantly impair their physical health or emotional development.

The trial court heard the Fosters' Motion to Strike on October 31, 2022. At the hearing, the caseworker testified that she had been assigned to the case for a little over a year. According to the caseworker, in the previous trial terminating the biological parents' rights, the Department's goal was unrelated adoption with a concurrent goal of related adoption. In the termination proceeding, and at the hearing on the motion to strike, the Department explained that the Department's

6

goal was to have the Fosters adopt the children, and the Fosters' attorney also told the court that the Fosters intend, and always intended, to adopt the children.

Edwin testified at the hearing on the motion to strike that he was the children's mother's brother. He also testified that at one point, he thought the children were going to be placed with him as a family member, and the caseworker told him he was a possible placement option. Edwin explained that he did not want the children to "be in the system when they have a family to return to and which is [his] duty[.]" Edwin expressed concern that if the children stayed "in the system[,]" they would never get to be around or know their family, and "in the long run that's not going to have a positive effect on them." When asked his concerns about the children's care, based on pictures of the children, Edwin replied, "hair care, skin care, [and] clothing." According to Edwin, the children's hair and skin looked dry and in need of moisturizer. He also thought their clothes looked old and worn. On cross-examination, Edwin testified that hair, skin, and clothing are all a part of health. He also testified that the Fosters are Caucasian, and the children are Black, and the Fosters "cannot show [the children] how to be Black Americans. They can love them, but they can't love them and show them how to be Black Americans."

Edwin's counsel argued that the issue was not about how the children were being treated in the foster home but rather the dangers of three-year-old children

remaining in the State's care for their full childhood and the uncertainty of not having permanency. Edwin's counsel also admitted to the court that she did not have any evidence to say that the children were in a dangerous home nor concerns about how the children were being treated by the Fosters. According to Edwin, the danger was "to make sure that the children were not stuck in foster care for the rest of their childhood." Edwin's attorney also explained Edwin did not file a petition before the prior lawsuit went to trial because "he was under the impression that the children were going to come to him." Finally, Edwin's attorney agreed that, if standing is based on facts about the children's current placement specifically, then there were no facts showing significant impairment.

At the close of the hearing, the trial court stated that, based on the evidence presented, Edwin had failed to establish standing under section 102.004(a)(1) of the Family Code and the court was dismissing his suit. The trial court signed an order granting the motion to strike on November 13, 2022. Edwin filed a Request for Findings of Fact and Conclusions of Law, but none were made, and Edwin did not file a notice of past due findings with the trial court as required by the Rules of Civil Procedure.[3] *See* Tex. R. Civ. P. 297. Edwin timely filed a notice of appeal.

---

[3] The failure to file the required "past due" notice is treated as a waiver of the right to complain on appeal of the trial court's failure to file findings. *Sonnier v. Sonnier*, 331 S.W.3d 211, 212-13 (Tex. App.—Beaumont 2011, no pet.).

Standard of Review and Applicable Law

We review a trial court's ruling on standing under a de novo standard of review. *See In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018); *In re M.B.*, No. 09-19-00247-CV, 2019 Tex. App. LEXIS 8847, at \*8 (Tex. App.—Beaumont Oct. 3, 2019, orig. proceeding) (mem. op.). When evaluating standing, "we construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *In re H.S.*, 550 S.W.3d at 155. When the trial court does not issue findings of fact, we imply all necessary findings of fact to support the trial court's order. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *In re W.J.B.*, 294 S.W.3d 873, 878 (Tex. App.—Beaumont 2009, no pet.). Because standing to bring a Suit Affecting a Parent-Child Relationship ("SAPCR") is governed by statute, we examine the statute to determine if the petitioner seeking to modify a SAPCR has been granted standing under the statute. *In re H.S.*, 550 S.W.3d at 155. On appeal, Edwin relies upon section 102.004(a)(1) of the Family Code, which provides, in relevant part,

> (a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:
> > (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]

9

Tex. Fam. Code Ann. § 102.004(a)(1).[4]

There is no factual dispute between the parties that Edwin, as the maternal uncle of the children, is related to the children within the third degree of consanguinity. The dispute here is whether Edwin met his burden to show "satisfactory proof" to the trial court that "the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." *See id.*; *In re H.S.*, 550 S.W.3 at 156 n.6; *Rolle v. Hardy*, 527 S.W.3d 405, 415-16 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (discussing this statutory provision as "unusual" because in 102.004(a) the Legislature confers standing on certain persons based on the existence of proof rather than on the pleading of facts).

---

[4] Appellant's petition alleged that he had standing under sections 102.004(a)(1), 102.006(c), and 156.002(b) of the Texas Family Code. Section 102.004 of the Family Code provides that, under certain circumstances, a grandparent or other relative of the child within the third degree of consanguinity may file an original suit requesting managing conservatorship. *See* Tex. Fam. Code Ann. § 102.004(a). Section 102.006 of the Family Code provides certain limitations on standing to file an original suit affecting the parent-child relationship. *See id.* § 102.006(c) (providing that an aunt or uncle of the children may file an original suit not later than ninety days after the date the parent-child relationship is terminated). Because Appellant filed his Petition to Modify on February 17, 2022, within ninety days of the trial court rendering its order terminating the parental rights of the biological parents, we need not discuss the applicability of section 102.006. *See id.* Section 156.002(b) provides that a person who has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction. *See id.* § 156.002(b). Appellant's brief only raises an issue on appeal under section 102.004(a)(1).

A petitioner seeking conservatorship has the burden to prove standing. *In re Smith*, 262 S.W.3d 463, 465 (Tex. App.—Beaumont 2008, orig. proceeding). The petitioner must show that the facts establishing standing existed at the time the petition was filed in the trial court. *See Rolle*, 527 S.W.3d at 417. Challenges to standing are determined as a matter of law and should not address the underlying merits of a claim, and in a hearing under section 102.004(a)(1), a court does not determine what type of access or possession should be awarded to the petitioner. *See id.* at 418-19 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). Whether a petitioner has presented "satisfactory proof" of standing is a narrower inquiry than a "best interest" determination on the merits of the underlying claims. *See id.* at 419. A petitioner must show "satisfactory proof," which in *Rolle* the court of appeals decided means a "preponderance of the evidence," that "some specific, identifiable behavior or conduct" would probably cause significant impairment to the children's physical health or emotional development, and evidence that merely raises a surmise or speculation of possible harm does not satisfy what section 102.004 requires. *See id.* at 420 (citing *Mauldin v. Clements*, 428 S.W.3d 247, 263 (Tex. App.—Houston [1st Dist.] 2014, no pet.)); *see also* Tex. Fam. Code Ann. § 105.005 (providing that findings under Title 5 of the Family Code "shall be based on a preponderance of the evidence[]"); *Von Behren v. Von Behren*, 800 S.W.2d 919, 921 (Tex. App.—San Antonio 1990, writ

11

denied) (holding that proof of standing "shall be based on a preponderance of the evidence under the rules generally applicable to civil cases[]").

Analysis

According to Appellant, there was sufficient proof that the order he requested was necessary because the children's present circumstances would significantly impair the children's physical health or emotional development. Appellant argues that his declaration which was attached to his petition, laid out certain relevant "facts regarding the children being separated from [their] biological family."[5] Appellant also argues that he testified that the children were "stranded in foster care without his legal intervention." Appellant argues that he testified about concern for the "adequate care for [the children's] skin and hair[]" and adverse psychological effects of being orphans.

Appellant argues that the trial court "misstated and misapplied the law when it limited the children's present circumstances to just their 'present living environment.'" Appellant argues that the trial court is not required to find that the

_____

[5] Appellant states in his declaration that he found out the children were in the custody of the Department in the late summer or early fall of 2021, he contacted the Department about his desire to have the children placed in his home, the Department representative visited his home and said a home study request would be made, he followed up with a text message and a phone call, the Department conducted an assessment of his home, "the children's present circumstances would significantly impair their physical health or emotional development," the children are in foster care with no contact with biological family, a final order was entered terminating parental rights, and appointing him as managing conservator and placing the children in his home is in the best interest of the children.

12

children's current placement is abusive or dangerous, and that "[c]onsideration for this standing provision is about conservatorship and not placement." According to Appellant, he need not establish that he should be appointed as sole managing conservator of the children to have standing to seek modification of the conservatorship order.

Appellant relies in large part on a quote from one section of the opinion in *In re K.D.H.*, 426 S.W.3d 879, 881 (Tex. App.—Houston [14th Dist.] 2014, no pet.), without including the remainder of that court's analysis. Appellant fails to explain why *K.D.H.* supports the Appellant's point in this appeal. That said, we find the facts in *K.D.H.* are distinguishable from the facts here.

In *K.D.H.*, the child's mother tested positive for marijuana while she was pregnant with K.D.H., and the Department "made arrangements for the Child to be placed with the Grandmother." *Id.* at 881. The child's father was incarcerated. *Id.* at 882. The record did not reflect that the Department had filed any lawsuit against the mother or father nor that the Department was ever appointed as a conservator of the child. *Id.* at 881 n.1. The grandmother cared for the child for about four months, and then the child was returned to the mother's care. *Id.* at 881. The grandmother then filed a lawsuit seeking to be appointed the sole managing conservator of the child, and the grandmother asserted she had standing under section 102.004(a)(1) of the Family Code. *Id.* The child's mother then filed a plea

to the jurisdiction, asserting that the grandmother lacked standing to bring suit. *Id.* at 882. In response to mother's plea, the grandmother presented "documentary evidence from the Department as well as certified copies of judgments reflecting the [m]other's various criminal convictions." *Id.*

The *K.D.H.* court explained that section 102.004(a) is an "unusual provision" because the Legislature "confers standing on certain parties based on the existence of proof rather than the existence of facts." *Id.* at 885. Therefore, the issue presented was whether "the order requested [was] necessary because the Child's present circumstances would significantly impair the Child's physical health or emotional development." *Id.* The court of appeals reviewed under a de novo standard whether the record evidence submitted regarding the issue of standing, considered in the light most favorable to the grandmother, would enable reasonable and fair-minded people to find that the order requested was necessary because the child's circumstances on the date grandmother filed her lawsuit would significantly impair the child's physical health or emotional development. *Id.* at 888 (citing Tex. Fam. Code Ann. § 102.004; *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007)).

The facts in *K.D.H.* differ from our case because in *K.D.H.*, (1) the parents' parental rights had not been terminated, (2) the record did not reflect that the Department had filed a suit against the parents nor was appointed conservator of

14

the child, and (3) the child had been in grandmother's care for several months. *See id.* at 188-90. By contrast, in our case, the children's parental rights had been terminated and the Department was appointed permanent managing conservator of the children, which this Court has upheld. *See generally In re D.P.*, 2022 Tex. App LEXIS 5279. The children in this case have never been placed with Edwin nor have they ever been under his care. Rather, the children have been placed with the Fosters for almost a year, and the Fosters consistently expressed their intent to adopt the children. Unlike the grandmother in *K.D.H.*, Edwin wholly failed to meet his burden to show that the children's present circumstances would significantly impair the children's physical health or emotional development.

In this case, the trial court stated at the hearing that it did not appear there was a disputed fact issue on standing. The court also stated,

> In this particular case, the undisputed facts are that at the time you filed, [the children] actually had been in the same foster home for 11 months and continued to be in that foster home and I think the only potential possibility, if you were going to present a danger, is if they were going to be moved imminently to a place that you felt was a problem. But I'm not sure that's how this is going to play out.

Here, the trial court asked whether Edwin was alleging standing "based solely on significant impairment[,]" and Edwin's counsel replied, "Yes." Edwin's attorney also told the trial court that the issue was not how the children were being treated in the Fosters' home but rather the children "being in the conservatorship of the Department and the dangers that come with that for [] 3-year-old children to

15

remain in the State's care for their full childhood." The trial court asked whether it was "the uncertainty of [] placement that posed the risk of harm[,]" and Edwin's attorney replied, that "it's the uncertainty of not having permanency." According to the record, the Department's goal was for the Fosters to adopt the children, and the Fosters' attorney told the court, "My clients intend to adopt these children[.] [] Their intention was always to adopt these children, Judge." The Fosters' attorney also told the court that the children had been living with them for "13, 14 months[,]" and the court stated that the adoption was on hold until the appeal of the termination proceeding was completed. The record evidence from the hearing does not support Appellant's argument that the court restricted its consideration to evidence of the children's "present living environment." In addition, the record does not support Appellant's assertion that the children were "stranded in foster care[.]"

Edwin testified at the hearing that he was concerned about the children being "in the system" and not with their family. He testified that he had concerns about the children's hair, skin, and clothes. Edwin's attorney then explained to the court there were no concerns about how the Fosters were treating the children and there was no evidence the Fosters' home was dangerous. The trial court then questioned the attorney about Edwin's argument:

> The Court: So essentially you don't -- you don't believe the children were in any type of -- were not at risk of harm in the place they were

16

living at the time of your filing. It's an uncertainty argument. It's the uncertainty of that placement that posed the risk of harm? I'm just trying to understand.

[Edwin's counsel]: Yeah. I guess it's the uncertainty of not having permanency. Period.

The attorney representing the Fosters told the trial court that the Fosters intended to adopt the children, and they were waiting for the outcome of the appeal of the termination of parental rights.

Section 102.004(a)(1) requires *satisfactory proof* that the requested modification is necessary because the children's present circumstances would *significantly* impair the children's physical health or emotional development. Tex. Fam. Code Ann. § 102.004(a)(1). At most, Edwin presented his lay opinion that it would be better for the children to be placed with family, and he argued that there was a potential risk because of the uncertainty of the children being "stranded" in the care of the Department. On this record, Edwin failed to meet his burden to show "satisfactory proof" that "the child[ren]'s present circumstances would significantly impair the child[ren]'s physical health or emotional development[.]" *See id.*; *In re H.S.*, 550 S.W.3d at 156 n.6. As previously noted, this Court upheld the trial court's order terminating the rights of Mother and Father and appointing the Department as the children's permanent managing conservator. *See In re D.P.*, 2022 Tex. App. LEXIS 5279, at **38-39.

17

Appellant also argues that "[t]he record reflects that the children did not have an attorney ad litem to monitor and manage the home study process after the termination trial." The record of the termination proceedings reflects that an attorney ad litem was appointed for the children for the duration of the case. Edwin admits in his declaration that the children's guardian ad litem and the caseworker visited his home. Following termination of the parents' rights, the Department was named permanent managing conservator, which this Court upheld. *See id.* The record in this appeal also reflects that an attorney for the children was present at the hearing on the Fosters' motion to strike. Appellant did not raise this issue in the trial court and so he did not preserve the issue for appeal. *See* Tex. R. App. P. 33.1. In addition, Appellant's assertion is not supported by the record. *See id.* 38.1(i). Therefore, we reject this argument.

Finding no error, we overrule Appellant's issue, and we affirm the trial court's order.

AFFIRMED.

                      _____
                      LEANNE JOHNSON
                      Justice

Submitted on July 31, 2023
Opinion Delivered August 17, 2023

Before Golemon, C.J., Johnson and Wright, JJ.