

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00476-CV

Tommy Dale **DAY**,
Appellant

v.

Melissa Kay **DAY**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-08365
Honorable Angelica Jimenez, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
              Luz Elena D. Chapa, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: June 20, 2024

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Appellant Tommy Day and appellee Melissa Day were married for twenty-eight years when Melissa filed her petition for divorce. After a bench trial, the trial court signed a divorce decree that, among other things, divided the parties' community property and awarded spousal maintenance to Melissa. In three appellate issues, Tommy argues the trial court erred by: (1) awarding Melissa a disproportionate share of the community property; (2) awarding spousal maintenance to Melissa; and (3) failing to conduct a fair and impartial trial. We sustain Tommy's

second issue in part and overrule his first and third issues. Accordingly, we affirm in part, reverse in part, and remand.

### BACKGROUND

Tommy and Melissa married in December 1993 and separated in 2018. In April 2021, Melissa filed for divorce. In her petition for divorce, Melissa requested, among other things, a disproportionate share of the community property and spousal maintenance. Tommy filed a general answer and a counter-petition requesting a just and right division of the community property and reimbursement for mortgage payments made during the parties' separation. On April 3, 2023, the parties appeared for trial. Tommy appeared represented by counsel; Melissa appeared *pro se*.

Melissa testified to her employment history, the parties' community property, and her past and current medical condition. When questioned about her expected expenses following the divorce, Melissa testified that she would have to pay for car insurance, medical expenses, and living expenses. However, Melissa could not estimate the cost of those anticipated expenses.

Tommy testified to his income, his expenses, and the property he wanted from the marital home. Tommy also alleged Melissa was abusive during their marriage. Regarding community debt, Tommy testified all the community debt was in his name, which included credit card debt, a loan for the pool at the marital home, and two loans taken out to invest in a failed business enterprise run by Melissa's brother (the "Investment Loans"). Concerning the Investment Loans, Tommy testified the combined remaining balance of the Investment Loans is slightly less than $22,000.[1] At the conclusion of Tommy's testimony and case-in-chief, the following exchange occurred between the parties and the trial court:

---

[1] During his opening statement, and as argued in his brief, Tommy's counsel opined that the remaining balance on the Investment Loans is $14,971. However, he does not cite to supporting evidence in the record.

**Trial Court**:  All right. Thank you, [Tommy]. You may step down.

**Tommy**:  Thank you.

**Trial Court**:  Any other witnesses?

**Tommy's Counsel**: No, Judge.

**Trial Court**:  All right. Do you rest?

**Tommy's Counsel**: Yes, Judge.

**Trial Court**:  All right. Any other witnesses, [Melissa]?

**Melissa**:  Your Honor, I rest. I mean, I just —

**Trial Court**:  [Melissa], take your time.

**Melissa**:  We could sit here and go back and forth about —

**Trial Court**:  Listen to me, please, before you keep going because —

**Melissa**:  I rest.

The parties then made closing arguments. Melissa began her closing argument by describing her physical ailments, including those in connection with her diabetic diagnosis, vascular problems, pulmonary issues, and blood pressure. Tommy raised several objections, which the trial court overruled and stated:

**Trial Court**:  I'm allowing [Melissa] to reopen her evidence. If you would like to cross-examine her, I'm going to allow you to do that too. I believe she made the decision to rest before she understood the consequences of that. Go ahead. Now, [Melissa,] you are not going to have an opportunity to reclose. This is it. This is your closing and your —

**Melissa**:  What I'm requesting from the court is for the things I asked for that I presented to you and [Tommy's counsel], and they are just to help me and my daughter until we can get back on our feet or until I can get back on my feet for just a minimum of three years. And that's all I have to say, Your Honor.

**Trial Court**:  And testify as to your expenses.

**Tommy's Counsel**: And, Your Honor, for the record, I'm going to object to that. Just for the record, I'm going to object. Counsel is—she is representing herself. She did not put that evidence on. She rested. She still didn't put that evidence on. And so, we are just objecting to her being allowed to produce that evidence as well as it was also not produced in discovery. It was not produced in her response to production or interrogatories or disclosures at which time she was represented the entire time.

**Trial Court**: Duly noted. The objections are overruled. In the interest of justice, [Melissa] will be allowed to testify. Go ahead.

Melissa then testified to the following monthly expenses: TV bill—$216; medical visits and supplies—$550; hygiene—$100; cell phone—$70; gas—$150; clothing—$200; and food—$300.

The trial court granted the parties divorce on insupportability grounds, divided the community property, and awarded spousal maintenance to Melissa. Tommy was awarded one bank account, fifty percent of the community interest in his military retirement benefits, one vehicle, and a fifth-wheel trailer. Melissa was awarded two bank accounts, fifty percent of the community interest in Tommy's military retirement benefits, and two vehicles. Additionally, the parties were awarded all life and disability insurance policies in their respective names. Regarding the community liabilities, each party was ordered to pay one-half of the $21,221.07 credit card debt; however, Tommy was ordered to pay the remaining balance on the Investment Loans. In the distribution of personal property, each party was awarded the items they asked for, and the trial court ordered the marital home to be sold; the proceeds of the sale would be distributed in the following manner: (1) the remaining balance of the mortgage; (2) the remaining balance of the pool loan; (3) the remaining balance of the credit card debt; and (4) remaining funds, if any, split sixty percent to Melissa and forty percent to Tommy. The trial court entered findings of fact and conclusions of law in accordance with its rulings.

On appeal, Tommy raises three issues: (1) the trial court erred by awarding Melissa a disproportionate share of the community property; (2) the trial court erred by awarding Melissa spousal maintenance; and (3) the trial court deprived him of a fair and impartial trial. Melissa did not file an appellee brief. Because the disposition of Tommy's third issue could affect the outcome of the property division and spousal maintenance award, we address it issue first.

### PROCEDURAL AND EVIDENTIARY CHALLENGES

In his third issue, Tommy argues that he was denied a fair and impartial trial. He contends this is a reversible point of error because the trial court abused its discretion by: (1) allowing Melissa to testify about her monthly expenses after the close of evidence; (2) eliciting testimony from Melissa regarding her anticipated expenses; (3) admitting evidence regarding Melissa's expenses when she did not comply with discovery; and (4) failing to hold Melissa to the same standards as an attorney.

We first address Tommy's assertions that the trial court abused its discretion in reopening evidence to allow Melissa to testify regarding her expenses and failed to hold her to the same standards as an attorney. "Whether to reopen the evidence is within the sound discretion of the trial court, and the court should exercise its discretion liberally in the interest of permitting both sides to fully develop the case in the interest of justice." *In re R.H.B.*, 660 S.W.3d 136, 156 (Tex. App.—San Antonio 2022, no pet.) (internal quotations omitted); TEX. R. CIV. P. 270 ("When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time[.]"). "In deciding whether to permit additional evidence, a trial court may consider (1) whether the movant showed due diligence in obtaining the evidence; (2) whether the additional evidence is decisive; (3) whether reopening the evidence will cause undue delay; and (4) whether reopening the evidence will cause injustice." *Moore v. Jet Stream Inv., Ltd.*,

315 S.W.3d 195, 201 (Tex. App.—Texarkana 2010, pet. denied); *In re B.J.M.*, No. 04-14-00300-CV, 2015 WL 1244804, at *2 (Tex. App.—San Antonio Mar. 18, 2015, no pet.) (mem. op.).

By reopening the presentation of evidence, Tommy avers the trial court showed bias in favor of Melissa as a *pro se* party. Tommy further claims his bias claim is proven by the trial court's failure to impose the same stringent courtroom procedures on Melissa as it did on Tommy's counsel. While it is true that *pro se* litigants are held to the same standards as if they were an attorney, the application of rules that turn on an actor's state of mind "may require a different result when the actor is not a lawyer." *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam).

Here, Melissa's testimony of expenses is decisive on the issues of marital property division and spousal maintenance. The reopening of evidence in this case did not cause undue delay, as Melissa was able to testify immediately. It is apparent from the trial court's on-the-record statements that the purpose of reopening the evidence was to procure the orderly administration of justice to finalize the parties' divorce. *See In re R.H.B.*, 660 S.W.3d at 156; TEX. R. CIV. P. 270. Additionally, it appears the trial court recognized that Melissa, as a *pro se* litigant, may not have fully comprehended the consequences of resting her case. *See Wheeler*, 157 S.W.3d at 444. The record also reveals that the trial court sustained Tommy's counsel's objections to Melissa's attempts to testify when cross-examining Tommy. Reviewing the entire record and considering the non-exclusive factors a trial court may consider when exercising its discretion, we hold that the trial court did not abuse its discretion in reopening the evidence or in its treatment of Melissa as a *pro se* litigant. *See id.*; *In re R.H.B.*, 660 S.W.3d at 156; *Moore*, 315 S.W.3d at 201.

Tommy next contends that after the trial court's reopening of the evidence, Melissa testified about information he requested in discovery, but that information Melissa did not produce. The admission or exclusion of evidence rests within the sound discretion of the trial court. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam). "Under Texas Rule of Civil Procedure

193.6, a party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . . unless the trial court finds that (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties." *In re J.A.V.*, No. 04-21-00084-CV, 2022 WL 379316, at *3 (Tex. App.—San Antonio Feb. 9, 2022, no pet.) (mem. op.) (citing TEX. R. CIV. P. 193.6(a)). "A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record." TEX. R. CIV. P. 193.6(b). However, before the burden shifts to Melissa to show good cause or lack of surprise or prejudice, the initial burden is on Tommy to show he requested the discovery at issue and that Melissa failed to adequately respond. *Id.* 193.6(a); *see also id.* 191.5.

At trial, the only discovery matters introduced into evidence were Melissa's responses to Tommy's interrogatories. In reviewing Tommy's interrogatories, there is no request for a list of Melissa's expenses. Nevertheless, Tommy represents in his brief that Melissa failed to list her expenses in response to his requests for production and initial disclosures. There is no evidence in this record—such as the requests themselves or a certificate of service for such requests—that Tommy served any discovery request on Melissa related to her expenses.[2] *See id.* 193.6(a); *id.* 21a(e) ("A certificate by a party or an attorney of record, or the return of the officer, or the affidavit of any other person showing service of a notice shall be prima facie evidence of the fact of service."). Moreover, after the trial court overruled Tommy's objections and allowed Melissa to testify regarding her expenses and medical condition, Tommy had an opportunity to cross-

---

[2] At trial, Tommy attempted to introduce his requests for production directed at Melissa into evidence. However, the trial court sustained Melissa's objection to the evidence, and Tommy does not challenge this evidentiary ruling on appeal.

examine Melissa. After his counsel concluded her cross-examination of Melissa, Tommy was then able to go back on the stand to rebut Melissa's testimony. Tommy's argument regarding the alleged discovery requests not in the record is unpersuasive. On this record, we hold that the trial court did not abuse its discretion by allowing Melissa to testify regarding her future expenses after the reopening of the evidence.

Finally, Tommy argues that the trial court erred by improperly questioning Melissa about her anticipated expenses following the trial court's allowance of Melissa to present evidence. A trial court's questioning of a witness is reviewed under an abuse of discretion standard. *Moreno v. Reliable Insulation, Inc.*, 217 S.W.3d 769, 772 (Tex. App.—Dallas 2007, no pet.). "Although a trial judge should not act as an advocate, a judge may put material questions to a witness to elicit evidence that has not otherwise been brought out." *Id.*; *Cason v. Taylor*, 51 S.W.3d 397, 413 (Tex. App.—Waco 2001, no pet.) ("For the purpose of eliciting evidence which has not otherwise been brought out, or to clarify testimony, it is ordinarily proper for a judge to put competent and material questions to a witness either on the examination in chief or on cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness."). After reviewing the entire record, we conclude the trial court did not abuse its discretion in questioning Melissa regarding her anticipated monthly expenses because the questions propounded by the trial court were material to the final disposition of the parties' divorce.

In sum, we hold that the trial court did not act arbitrarily or without guidance when it reopened trial evidence subject to cross-examination by Tommy. Likewise, we reject Tommy's assertions that the trial court showed bias towards Melissa as a *pro se* litigant or that the trial court acted improperly by questioning Melissa. Accordingly, we overrule Tommy's third issue.

**DIVISION OF COMMUNITY PROPERTY**

In his first issue, Tommy contests the trial court's division of the community assets and liabilities.

*Standard of Review*

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001. We review a trial court's division of property for an abuse of discretion. *Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). To constitute an abuse of discretion, the trial court's division of the property must be manifestly unjust and unfair. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980); *Evans v. Evans*, 14 S.W.3d 343, 345–46 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We resolve every reasonable presumption in favor of a proper exercise of discretion of the trial court in dividing the property of the parties. *Monroe v. Monroe,* 358 S.W.3d 711, 719 (Tex. App.—San Antonio 2011, pet. denied). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision." *Garza*, 217 S.W.3d at 548; *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.) ("The trial court's discretion is not unlimited, and there must be some reasonable basis for an unequal division of the property."). However, if "reversible error affecting the 'just and right' division of the community estate is found," we "must remand the entire community estate for a new division." *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Garcia v. Garcia*, No. 04-19-00796-CV, 2021 WL 2556622, at *2 (Tex. App.—San Antonio June 23, 2021, no pet.) (mem. op.).

In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; therefore, legal and factual insufficiency are not independent grounds of reversible error. *Garza*, 217 S.W.3d at 549. Instead, they constitute factors relevant to

our assessment of whether the trial court abused its discretion. *Id.* In considering whether the trial court abused its discretion because the evidence is legally or factually insufficient, we apply a two-prong test: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion. *Id.* We then consider whether, based on the evidence, the trial court made a reasonable decision. *Id.*

Furthermore, because the trial court is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *See In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting the trial court is best able to observe and assess witnesses' demeanor and credibility and to sense "forces, powers, and influences" that may not be apparent merely from reading the record on appeal). Instead, we defer to the trial court's resolution of underlying facts and to the credibility determinations that may have affected its decision. *Id.* Thus, an abuse of discretion generally will not occur when a trial court bases its decision on conflicting evidence. *In re De La Pena*, 999 S.W.2d 521, 526 (Tex. App.—El Paso 1999, no pet.). Additionally, when, as here, the trial court issues findings of fact and conclusions of law, we will defer to the trial court's findings and conclusions if there is some evidence to support them. *Guerrero v. Guerra*, 165 S.W.3d 778, 784 (Tex. App.—San Antonio 2005, no pet.).

*Applicable Law*

While the trial court's division of the community property must be equitable, its division does not have to be exactly equal. *In re Elabd*, 589 S.W.3d 280, 287 (Tex. App.—Waco 2019, no pet.). In dividing the community property in a just and right manner, trial courts often assess the *Murff* factors, which include "the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of

separate estates, and the nature of the property." *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). The trial court is not required to consider every factor in every case, as which factors are relevant depends on the specific circumstances of the marriage. *Roberts v. Roberts*, 531 S.W.3d 224, 232 (Tex. App.—San Antonio 2017, pet. denied).

*Analysis*

In Tommy's first issue, he asserts the trial court abused its discretion when it failed to (1) divide the community assets and liabilities in a just and right manner and (2) grant his reimbursement claim.[3] Because of the trial court's failure to correctly apply the law, Tommy concludes the case should be remanded.

We disagree the trial court abused its discretion in dividing the community assets and liabilities. Regarding the division of assets, Tommy challenges the trial court's award of sixty percent of any remaining balance of the marital home sale proceeds to Melissa. In evaluating Tommy's argument, we review the record by applying the *Murff* factors to the facts specific to this case. *See Murff*, 615 S.W.2d at 699; *Roberts*, 531 S.W.3d at 232.

Here, the record shows that both parties have the same level of education—high school graduates with some college. While Tommy was working full-time during the marriage, Melissa worked intermittently at a bank and as a police officer. When Melissa was not employed during the marriage it was due to a combination of factors, including her own desires, her health conditions, caring for her sick mother, and being a homemaker. Melissa testified that she has been a diabetic for most of her life and recently had a portion of her right foot amputated. She also testified she anticipates that she will have to undergo two additional surgeries due to diabetes-

---

[3] Tommy additionally argues that the trial court abused its discretion by failing to grant the parties' divorce on fault grounds. However, in his counter-petition, Tommy did not request a divorce be granted on any grounds other than insupportability. Because Tommy failed to plead a fault ground for divorce, and he does not argue fault was tried by consent, this argument is not preserved for our review. *See* TEX. R. APP. P. 33.1(a).

related complications. Regarding the parties' earning capacity, the evidence at trial revealed that Tommy earns a yearly salary of $92,458.22 from his current employment, $1,419.80 a month in military retirement, and $4,100 a month in military disability.[4] Melissa does not have a source of employment income. Melissa testified that she resided with another man for a brief period after the parties' separation and that she periodically receives varying amounts of monetary gifts from friends and family. Additionally, Tommy testified that Melissa was abusive towards him during their marriage. The trial court was free to consider the parties' respective capabilities and faults when contemplating Melissa's claim for a disproportionate share of the community property. *See Murff*, 615 S.W.2d at 699; *In re A.L.E.*, 279 S.W.3d at 427; *In re De La Pena*, 999 S.W.2d at 526. Reviewing the record with deference to the trial court's broad discretion, we hold the trial court did not err by awarding Melissa sixty percent of the proceeds of the sale of the marital home minus the remaining balance of the community credit card debt, if any proceeds remain.

As to the liabilities, Tommy challenges the trial court's decision not to apportion the responsibility of the Investment Loans between the parties. "[T]here is a presumption that debt acquired by either spouse during marriage was procured on the basis of community credit." *Viera v. Viera*, 331 S.W.3d 195, 204 (Tex. App.—El Paso 2011, no pet.); TEX. FAM. CODE § 3.003(a). This community liability presumption may be overcome by clear and convincing evidence. TEX. FAM. CODE § 3.003(b). Here, it is undisputed that the Investment Loans were taken out in Tommy's name to invest with Melissa's brother. The evidence at trial showed that Tommy and Melissa were to receive approximately $3,100 a month return on investment and could recoup their initial investment at any time. Tommy testified that the parties received one monthly payment and never received another. Melissa did not dispute the genesis of the Investment Loans, nor did she dispute

---

[4] Tommy testified that he expects to receive less in military disability benefits after the divorce is finalized.

that the community estate benefitted from the initial monthly payment. In sum, Melissa did not overcome the presumption that the liability was borne by the community. *See Powell v. Powell*, 822 S.W.2d 181, 184 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (holding spouse failed to present clear and convincing evidence that a liability incurred during the marriage was separate from the community).

Nevertheless, despite the Investment Loans being a community liability, the trial court has the discretion to impose the entirety of the liability on one spouse if doing so furthers the court's duty to divide the community property in a just and right manner. *See Young v. Young*, 168 S.W.3d 276, 286 (Tex. App.—Dallas 2005, no pet.) ("The parties' liabilities are factors to be considered in making a just and right division."); *see also Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 654–56 (Tex. 2013) (dispersing the general notion that liabilities assumed during a marriage encumbered both spouses jointly). Here, we cannot hold the trial court divided the community liabilities in a manifestly unjust and unfair manner given the disparity in the parties' income, ability to engage in employment, contributions to the household during the marriage, and Melissa's health condition. *See id.*; *Coggin v. Coggin*, 738 S.W.2d 375, 377–78 (Tex. App.—Corpus Christi–Edinburg 1987, no writ) (holding trial court did not abuse its discretion by awarding a greater burden of liability to husband given the disparity between the parties' employment history and earning capabilities). Accordingly, the trial court was within its discretion when it unevenly divided the remaining balance of the Investment Loans between the parties.

Addressing his second argument, Tommy contends the trial court abused its discretion by denying his reimbursement claim. Tommy sought reimbursement for mortgage payments made on the marital home during the parties' separation. "When one marital estate improves another without receiving a benefit, a claim for reimbursement may arise." *Sonnier v. Sonnier*, 331 S.W.3d 211, 216 (Tex. App.—Beaumont 2011, no pet.); TEX. FAM. CODE § 3.402. "The party claiming

the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). "The rule of reimbursement is purely an equitable one," and we review the trial court's determination of a claim for reimbursement for an abuse of discretion. *Hinton v. Burns*, 433 S.W.3d 189, 195 (Tex. App.—Dallas 2014, no pet.); *Sonnier*, 331 S.W.3d at 216.

In the present case, the marital home was purchased during the marriage, and the parties do not dispute that the home constitutes community property. Additionally, during the parties' separation, it is undisputed that the parties' child resided in the home with Melissa. Generally, a marital home remains community property throughout a marriage, even during periods of separation. *See Nurse v. Nurse*, No. 13-01-515-CV, 2002 WL 1289898, at *2 (Tex. App.—Corpus Christi–Edinburg June 13, 2002, no pet.) ("Payment of community [liabilities] will be presumed to have been made with community property funds, absent a showing that the expenditure was made with one party's separate property."). Thus, at the time the mortgage payments were made during the parties' separation, the presumption existed that the mortgage payments were made with community funds. *See id.* As the party seeking reimbursement, Tommy had the burden to show by clear and convincing evidence that he did not use community funds to pay the marital home mortgage while he and Melissa were separated. TEX. FAM. CODE § 3.003(b); *see also McCann v. McCann*, 22 S.W.3d 21, 23 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("If this presumption is not rebutted by the party opposing the claim for reimbursement, all expenditures will be presumed community expenditures."); TEX. FAM. CODE § 3.409(2) (establishing a "court may not recognize a marital estate's claim for reimbursement for the living expenses of a spouse or child of a spouse."). Tommy's brief does not direct us to any evidence in the record that clearly and convincingly establishes his claim. Accordingly, the trial court did not abuse its discretion in denying Tommy's claim for reimbursement.

In sum, the record establishes that the trial court did not abuse its discretion in dividing the community assets and liabilities or denying Tommy's claim for reimbursement. Accordingly, we overrule Tommy's first issue.

### SPOUSAL MAINTENANCE

In his second issue, Tommy argues the trial court abused its discretion by awarding spousal maintenance to Melissa. Tommy first asserts the record does not support the trial court's finding that Melissa is eligible for maintenance. Second, even if Melissa is statutorily eligible, Tommy contends Melissa failed to present sufficient evidence of her minimum reasonable needs and the amount of maintenance awarded by the trial court exceeds the statutory maximum. Tommy does not challenge the duration of spousal maintenance award. The trial court ordered Tommy to pay spousal maintenance for four years in the following amounts:

| | |
|---|---|
| Year One | $4,000 a month |
| Year Two | $3,000 a month |
| Year Three | $2,500 a month |
| Year Four | $1,000 a month |

### Standard of Review

"We review a trial court's decision regarding spousal maintenance under an abuse of discretion standard." *Wiedenfeld v. Markgraf*, 534 S.W.3d 14, 18 (Tex. App.—San Antonio 2017, no pet.). In our review, pursuant to the abuse of discretion standard, we apply the same guiding principles as we did in reviewing the trial court's division of the parties' community property. *Scott v. Scott*, No. 04-17-00155-CV, 2018 WL 2694817, at *3 (Tex. App.—San Antonio June 6, 2018, no pet.) (mem. op.); *In re Elabd*, 589 S.W.3d at 284.

### Applicable Law

"Spousal maintenance is allowed only under very narrow and very limited circumstances." *Kelly v. Kelly*, 634 S.W.3d 335, 363 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (internal

quotations omitted). Before a trial court may award spousal maintenance, the spouse seeking maintenance must show they are statutorily eligible. TEX. FAM. CODE § 8.051.

Under Section 8.051 of the Texas Family Code, if the spouse seeking maintenance satisfies specific eligibility requirements, the trial court has the discretion to award maintenance. *Id*.; *Saucedo v. Aguilar-Saucedo*, No. 04-21-00298-CV, 2022 WL 4492099, at *1 (Tex. App.—San Antonio Sept. 28, 2022, no pet.) (mem. op.). Relevant here, a spouse seeking maintenance is eligible only if: "(1) the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs; and (2) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical . . . disability." TEX. FAM. CODE § 8.051(2)(A). "The term 'minimum reasonable needs' is not defined in the Family Code." *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied). Rather, "determining what the 'minimum reasonable needs' are for a particular individual is a fact-specific determination which must be made by the trial court on a case-by-case basis." *Id.* "While a list of expenses is helpful, such a list is not the only evidence upon which a trial court can determine a person's 'minimum reasonable needs.'" *Id.*

Regarding the second prong—*i.e.*, the reasoning behind why Melissa is unable to earn sufficient income to provide for her minimum reasonable needs—the trial court found Melissa has an incapacitating physical disability. In line with this finding, and as the party seeking maintenance at trial, Melissa bore the burden to provide sufficient evidence of an incapacitating physical disability that prevents her from being able to satisfy her minimum reasonable needs. *See Roberts*, 531 S.W.3d at 230. The evidence necessary to sustain an incapacitating physical disability finding may be reasonably inferred from circumstantial evidence or the competent testimony of a lay witness. *Id.* at 228. In this vein, "[a] physical disability or incapacity need not be proven by medical

evidence," but the spouse seeking maintenance "must still present probative evidence that rises above a mere assertion that unsubstantiated symptoms collectively amount to an incapacitating disability." *Id.* at 228–30. We will defer to the trial court's finding that Melissa suffers from an incapacitating physical disability if there is evidence in the record to support such a finding. *In re Elabd*, 589 S.W.3d at 284; *In re McFarland*, 176 S.W.3d 650, 652 (Tex. App.—Texarkana 2005, no pet.).

*Application*

### A. Statutory Eligibility

Pertinent to eligibility, the trial court found: Melissa lacks the ability to earn sufficient income to provide for her minimum reasonable needs; Melissa has an incapacitating physical disability; and Melissa meets the statutory bases for maintenance under the Texas Family Code. Considering all the evidence in the light most favorable to the trial court's ruling, there is evidence in the record to support these conclusions. *See id*.

At trial, Melissa testified that her minimum reasonable needs—including entertainment, medical visits and supplies,[5] hygiene, cell phone, gas, clothing, and food—total $1,370 a month. Melissa testified she did not have a source of employment income and she was applying for jobs; however, she needed to work remotely as she could not be on her feet for long periods of time. The record further reveals that while Melissa was employed periodically throughout the marriage, she had not been employed since 2010 and had been taking care of her ill mother. *See Soto v. Soto*, 656 S.W.3d 767, 771 (Tex. App.—El Paso 2022, no pet.) (recognizing that part-time employment

---

[5] Tommy testified that Melissa would be eligible to receive coverage under his military retirement insurance plan for up to a year after the divorce. Therefore, Tommy contends that medical supplies and visits should not be taken into consideration when calculating Melissa's minimum reasonable needs because those services and supplies are fully covered under the insurance plan. Melissa testified that she could be covered, but her testimony contradicted Tommy's regarding when coverage would begin and the insurance's eligibility requirements. Because their testimony is conflicting, we defer to the trial court as it was in the best position to assess the conflicting evidence. *See In re De La Pena*, 999 S.W.2d at 526.

and providing caretaking "does not mean that Wife's physical disability could not be 'incapacitating.'"). Although Melissa testified that she periodically receives varying amounts of monetary gifts from friends and family, the record does not establish that these periodic gifts rebut the trial court's finding that she is unable to earn sufficient income to provide for her minimum reasonable needs.[6]

Among other things, Melissa testified extensively regarding her most recent surgery–a partial amputation of her foot–that will require two additional surgeries, and her platelet transfusions. She further testified about the effect her health conditions have on her quality of life and on her ability to seek employment. As a factfinder, the trial court could infer Melissa satisfied her burden of presenting probative evidence that her health conditions collectively amount to an incapacitating disability. *See id.*; *Roberts*, 531 S.W.3d at 228–30. Accordingly, we cannot say the trial court abused its discretion in determining Melissa is eligible for spousal maintenance.

B. *Amount of Maintenance Awarded*

Finally, Tommy argues the amount of spousal maintenance awarded exceeds the statutory maximum. When, as here, the spouse seeking maintenance carries her burden to show she is statutorily eligible, the non-exclusive factors a trial court shall consider in determining the "nature, amount, duration, and manner of periodic" maintenance payments include:

> (1) each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage; (2) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training; (3) the duration of the marriage; (4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance; (5) the effect on each spouse's ability to provide for that spouse's

---

[6] Although Melissa does not have an income, Tommy argues she will receive a substantial amount of money from the eventual sale of the marital home. We are not persuaded by this argument as it is speculative when the house will sell, at what price it will sell for, and what—if any—monies Melissa will receive after the costs associated with the sale and the offsets from the community liabilities.

minimum reasonable needs while providing periodic child support payments or maintenance, if applicable; (6) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common; (7) the contribution by one spouse to the education, training, or increased earning power of the other spouse; (8) the property brought to the marriage by either spouse; (9) the contribution of a spouse as homemaker; (10) marital misconduct, including adultery and cruel treatment, by either spouse during the marriage; and (11) any history or pattern of family violence.

TEX. FAM. CODE § 8.052. In considering these factors, a trial court—exercising its discretion in awarding maintenance—must limit its order to the lessor of $5,000 a month or twenty percent of the obligor's monthly gross income. *Id.* § 8.055(a)(1), (2). For purposes of determining Tommy's gross monthly income, his gross employment salary and net military retirement pay are included in the computation, but his Department of Veterans Affairs service-connected disability compensation is not. *Id.* § 8.055(a-1)(1)(A), (E), (2)(F).

Tommy's gross monthly employment income is $7,704.85. Tommy additionally earns $4,100 a month in Department of Veterans Affairs service-connected disability and $1,419.80 in military retirement. Because Tommy's income in connection with his Department of Veterans Affairs service-connected disability is exempt from the statutory calculation, Tommy's employment income, in addition to his military retirement, establishes his gross monthly income at $9,124.65. *See id.* Twenty percent of $9,124.85 is $1,824.93. The amount of $1,824.93 is far less than the first three years of spousal maintenance awarded to Melissa. Thus, the trial court acted without reference to the applicable statutory scheme when it awarded monthly maintenance payments that exceeded twenty percent of Tommy's gross monthly income. *Id.* § 8.055(a)(1), (2).

On this issue, we hold the trial court did not act outside of its discretion when it found Melissa to be statutorily eligible for spousal maintenance. However, the trial court acted without reference to the statutory scheme in the amount of monthly maintenance awarded for the first three years. We sustain Tommy's second issue in part.

**CONCLUSION**

We sustain Tommy's second issue in part but overrule his first and third issues in their entirety. We reverse and remand for a new trial consistent with this opinion.

Lori I. Valenzuela, Justice